BOBBY L. CAMPBELL, Plaintiff v. DUKE UNIVERSITY HEALTH SYSTEM, INC., CRITICAL HEALTH SYSTEMS OF NORTH CAROLINA, P.C., CRITICAL HEALTH SYSTEMS, INC., SOUTHEASTERN ORTHOPEDICS SPORTS MEDICINE AND SHOULDER CENTER, P.A., DONALD A. EDMONDSON, M.D., CYNTHIA KAEGER, CRNA, AND KEVIN P. SPEER, M.D., Defendants

No. COA09-581

(Filed 16 March 2010)

**Medical Malpractice— Rule 9(j)—statement not supported by facts—summary judgment**

The trial court did not err by granting summary judgment for defendants in a medical malpractice case where plaintiff's complaint facially complied with Rule 9(j), but discovery subsequently established that the expert statement was not supported by the facts.

Appeal by plaintiff from order entered 12 January 2009 by Judge Howard E. Manning, Jr., in Wake County Superior Court. Heard in the Court of Appeals 28 October 2009.

---

CAMPBELL v. DUKE UNIV. HEALTH SYS., INC.

[203 N.C. App. 37 (2010)]

*The Law Office of James M. Johnson, by James M. Johnson; and Brenton D. Adams, for plaintiff appellant.*

*McGuire Woods, LLP, by Mark E. Anderson, Claire A. Modlin and Monica E. Webb, for Critical Health Systems of North Carolina, P.C., Critical Health Systems, Inc., and Donald A. Edmondson, M.D., defendant appellees.*

*Crawford & Crawford, LLP, by Renee B. Crawford and Robert O. Crawford, III, for Southeastern Orthopedics and Kevin P. Speer, M.D., defendant-appellees.*

HUNTER, JR., Robert N., Judge.

Bobby Campbell ("plaintiff") appeals from the trial court's order granting summary judgment in favor of Critical Health Systems of North Carolina, Inc., Critical Health Systems, Inc., Southeastern Orthopedics Sports Medicine and Shoulder Centers, P.A., Donald A. Edmondson, M.D., and Kevin P. Speer, M.D. ("defendants:). After review, we hold, notwithstanding that plaintiff's complaint facially complied with Rule 9(j) by including a statement that a medical expert qualified under Rule 702 would testify that defendants' actions did not comply with the standard of care where discovery subsequently established that the statement was not supported by the facts, dismissal is appropriate. Accordingly, we affirm the trial court's order.

## I. FACTUAL BACKGROUND

On 25 November 2003, plaintiff suffered an injury to his right shoulder while working as a plumber at Cape Fear Valley Hospital in Fayetteville, North Carolina. An MRI showed that plaintiff sustained a large rotator tear as a result of his shoulder injury. On 16 December 2003, Dr. Bradley Broussard initially examined and diagnosed plaintiff with a combination of joint degenerative disease and rotator cuff tear to the right shoulder. Dr. Broussard injected plaintiff's right shoulder with pain medication, but informed plaintiff that he would need to undergo surgery.

On 14 January 2004, defendant, Dr. Kevin P. Speer, an orthopedic surgeon employed by codefendant, Southeastern Orthopedics Sports Medicine and Shoulder Center, P.A., examined plaintiff's right shoulder and concluded that he should undergo surgery. Dr. Speer performed a right shoulder arthroscopy and right open rotator cuff repair at Duke Raleigh Hospital on 9 February 2004. Defendant, Dr.

Donald A. Edmondson, an anesthesiologist employed by codefendant, Critical Health Systems of North Carolina, P.C., served as the attending anesthesiologist during the surgical procedure. During the procedure, Dr. Edmondson and Dr. Speer were admittedly responsible for positioning, padding, and monitoring plaintiff's left arm.

At the beginning of the surgery, Dr. Edmondson and Dr. Speer placed plaintiff in the "beach chair" position. This position is the standard position used for many shoulder surgeries. In this position, the patient is placed in a semi-reclining, semi-sitting position with the patient's arms resting at either side and padded with various pads and foams to keep the patient in the position safely. There is no documentary evidence in Dr. Edmondson's records or any other record of whether or not plaintiff was properly padded and monitored during the procedure.

Plaintiff contends that he began to feel severe pain and numbness in his left arm, elbow, and fingers approximately one hour after surgery. During plaintiff's first follow up visit on 19 February 2004, after the initial 9 February 2004 surgery, Dr. Speer noted that plaintiff was doing well. Plaintiff first reported his painful condition to Dr. Speer on 1 April 2004, during a second follow-up visit. At that time, Dr. Speer noted that plaintiff was suffering from continued ulnar neuropathy[1] at his left elbow. An EMG confirmed the left elbow ulnar neuropathy and Dr. Speer performed subcutaneous nerve transfer on plaintiff's left elbow on 21 July 2004. Plaintiff continued to see Dr. Speer on a monthly basis after his surgery until he was discharged to a long term pain management clinic.

In his sworn affidavit, plaintiff avers that he did not experience pain or medical problems with his left arm prior to the 9 February 2004 surgery and that his ulnar nerve neuropathy was not pre-existing. After the 21 July 2004 surgery and to the present date, plaintiff contends that he experiences pain in his left arm on a daily basis and that his arm is permanently damaged.

On 8 February 2007, plaintiff filed a professional negligence claim alleging that his left arm was permanently damaged and injured due to defendants' failure to comply with the applicable standard of care when padding, positioning, and monitoring his left arm, wrist, and hand during the 9 February 2004 surgery to his right shoulder. Plain-

1. Ulnar neuropathy is an inflammation of the ulnar nerve, a major nerve that supplies movement and sensation to the arm and hand. Damage can cause numbness, tingling, or pain into the arm and hand on the side of the little finger.

tiff's theory of the case is that the ulnar neuropathy in his left arm was caused by defendants' failure to properly monitor his arm during the operation. Because his injury was not pre-existing and he began to experience pain in his left arm one hour after the surgery, he contends that his arm became mis-positioned during the procedure resulting in his injury. Plaintiff does not rely on the doctrine of *res ipsa loquitur.*

On 2 November 2007, plaintiff named Dr. Jeffrey Cocozzo, an anesthesiologist practicing in Fort Lauderdale, Florida, as his expert witness who would testify pursuant to the heightened pleading requirements of N.C. R. Civ. P. 9(j) that defendants breached the applicable standard of care and proximately caused plaintiff's injuries. Defendants answered and denied the alleged negligence and injuries. A consent discovery order was entered by the trial court on 17 January 2008, pursuant to which plaintiff designated Dr. Cocozzo and defendant Speer as the intended expert witnesses for trial. On 10 December 2008, Dr. Cocozzo was deposed and gave the following sworn testimony regarding defendants' alleged negligence:

Q. . . . Do you believe that because Mr. Campbell sustained a nerve injury whose symptoms you believe first appeared post-operatively, do you believe because he sustained a nerve injury, negligence must have occurred?

A. Well, it's basically what he did say, right. He—he states that he did not have any nerve injury before and did end up having nerve injury during—during the surgery. So therefore that would be—that would be negligence, yes.

. . . .

Q. You're presuming that there was negligence based on the fact that there is an injury in this case; is that correct?

A. Yes.

Q. And you can't point to any specific incident that happened during the surgery that would have caused this injury, it's just based on your presumption of negligence because there was an injury at the end of the surgery; is that correct?

A. Right, right.

Q. And if Mr. Campbell did, in fact, have a pre-existing condition, then that doesn't mean there was anything that happened during the surgery that caused his injury; is that correct?

CAMPBELL v. DUKE UNIV. HEALTH SYS., INC.

[203 N.C. App. 37 (2010)]

A. Right. If he had something that was a pre-condition and he already had an injury, then obviously he already had an injury.

. . . .

Q. Okay. And tell me, what is the basis of your opinion that improper positioning and/or padding resulted in damage to Mr. Campbell's ulnar nerve?

A. Well, basically he—from—from what I know so far talking to him and looking at the records, his—I don't have any reason to believe that—that he didn't have a normal functioning before the surgery.

He went in for surgery that—where you can get a complication of having—from malpositioning of an ulnar nerve injury and within a day or so after the surgery he seemed to have—started having complaints of ulnar nerve injury.

Dr. Speer and Dr. Edmondson both contend that plaintiff was properly padded, positioned, and monitored during surgery solely because it is their custom to do so during shoulder surgery. However, Dr. Edmondson admitted that he had no independent recollection of plaintiff's surgery or what he did or did not do during plaintiff's surgery.

On 22 December 2008, defendants Dr. Speer and Southeastern Orthopedics Sports Medicine and Shoulder Center, P.A., filed motions for summary judgment on the basis that the affidavit and testimony of Dr. Cocozzo show that "(1) there is no evidence from a qualified expert that Dr. Speer's care was not in accordance with the applicable standards of care and (2) that no act or omission of Dr. Speer was a proximate cause of the plaintiff's alleged injury." Subsequently, on 23 December 2008, defendants Critical Health Systems of North Carolina, P.C., Critical Health Systems, Inc., and Donald A. Edmondson, M.D., filed a motion for summary judgment based on a contention that there is no genuine issue of material fact with regard to "whether any actions or inactions of [the] [d]efendants were the proximate cause of [p]laintiff's alleged injury." The trial court granted both the 22 and 23 December 2008 motions for summary judgment and cited to *Kenyon v. Gehrig*, 183 N.C. App. 455, 459, 645 S.E.2d 125, 128 (2007), *disc. review denied*, 362 N.C. 176, 658 S.E.2d 272 (2008), as the basis for the decision (holding that where "plaintiff's expert witnesses based their opinions only on the fact of the injury itself; their assignation of negligence on defendants' part constituted mere

speculation" and is insufficient to withstand a motion for summary judgment). Plaintiff appeals.

## II. STANDARD OF REVIEW

Summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007). When reviewing a trial court's grant of a motion for summary judgment, the standard of review is whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Smith v. Harris*, 181 N.C. App. 585, 587, 640 S.E.2d 436, 438 (2007). "An appeal from an order granting summary judgment raises only the issues of whether, on the face of the record, there is any genuine issue of material fact, and whether the prevailing party is entitled to judgment as a matter of law." *Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C. App. 349, 353, 595 S.E.2d 778, 782 (2004). We review a trial court's ruling on summary judgment de novo. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

## III. ANALYSIS

N.C. R. Civ. P. 9(j) provides, in pertinent part:

Any complaint alleging medical malpractice by a health care provider as defined in G.S. 90-21.11 in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless:

(1) The pleading specifically asserts that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;

(2) The pleading specifically asserts that the medical care has been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or

(3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C. Gen. Stat. § 1A-1, Rule 9(j) (2007). In *Barringer v. Forsyth County Wake Forest University Baptist Medical Center*, our Court set forth the following principles for reviewing a party's compliance with Rule 9(j) in medical malpractice actions:

> Rule 9(j) unambiguously requires a trial court to dismiss a complaint if the complaint's allegations do not facially comply with the rule's heightened pleading requirements. Additionally, this Court has determined "that even when a complaint facially complies with Rule 9(j) by including a statement pursuant to Rule 9(j), if discovery subsequently establishes that the statement is not supported by the facts, then dismissal is likewise appropriate." In considering whether a plaintiff's Rule 9(j) statement is supported by the facts, "[']a court must consider the facts relevant to Rule 9(j) and apply the law to them.' " In such a case, this Court does not "inquire as to whether there was any question of material fact," nor do we "view the evidence in the light most favorable" to the plaintiff. Rather, " 'our review of Rule 9(j) compliance is *de novo*, because such compliance clearly presents a question of law. . . .' "

—— N.C. App. ——, ——, 677 S.E.2d 465, 477 (2009) (citations omitted).

In the present case, plaintiff contends that there are sufficient facts to raise genuine issues of fact as to the following: (1) defendants' negligence while caring for plaintiff; (2) whether plaintiff suffered from a pre-existing ulnar nerve neuropathy; and (3) whether plaintiff's left arm was padded and positioned in accordance with the standard of care for rotator cuff surgery. Plaintiff's evidence included the affidavit from, and expert testimony of, Dr. Cocozzo; however, his testimony failed to specifically assert that defendants' actions were the proximate cause of the injuries to plaintiff's left arm, wrist, and hand. Moreover, plaintiff, in his reply brief, specifically argues direct evidence medical malpractice negligence and rejects any application of the doctrine of *res ipsa loquitur*.

Plaintiff likely rejects the application of *res ipsa loquitur* because our Courts are reluctant to apply the doctrine in medical malpractice cases, and further, plaintiff does not meet the first prong to invoke the doctrine, as Dr. Cocozzo admitted that ulnar neuropathy can be a complication of shoulder surgery. *See Kenyon*, 183 N.C. App. at 460, 645 S.E.2d at 128-29 (stating that *res ipsa loquitur*

allows the fact finder to draw an inference of negligence from the circumstances surrounding the injury when

> (1) "the injury is of a type that does not ordinarily occur in the absence of some negligent act or omission," (2) "direct proof of the cause of [the] injury is not available," and (3) "the instrumentality involved in the accident is under the defendant's control."
>
> . . . .
>
> [Moreover], [t]o allow the jury to infer negligence merely from an unfavorable response to treatment would be tantamount to imposing strict liability on health care providers.

*Id.* (citations omitted).

In order to survive a summary judgment motion in a direct evidence medical malpractice case, plaintiff is required to forecast evidence demonstrating the existence of a *prima facie* case of negligence, one element of which is causation. The evidence of causation in a medical negligence case "must be probable, not merely a remote possibility." *White v. Hunsinger*, 88 N.C. App. 382, 387, 363 S.E.2d 203, 206 (1988) (citation omitted). Courts rely on expert testimony to show medical causation because "the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen[.]" *Click v. Pilot Freight Carriers*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). With regard to this issue, our Supreme Court in *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000), further explains that

> when such expert opinion testimony is based merely upon speculation and conjecture, it can be of no more value than that of a layman's opinion. As such, it is not sufficiently reliable to qualify as competent evidence on issues of medical causation. Indeed, this Court has specifically held that "an expert is not competent to testify as to a causal relation which rests upon mere speculation or possibility."

(citation omitted). Moreover, in *Schaffner v. Cumberland County Hosp. System*, our Court held that "ordinarily negligence must be proved and cannot be inferred from the fact of an injury[.]" 77 N.C. App. 689, 691, 336 S.E.2d 116, 118 (1985).

As plaintiff argues direct negligence, we only find it necessary to address whether plaintiff's facts raise a genuine issue of fact as to

whether defendants proximately caused plaintiff's injuries by breaching the standard of care while padding and positioning plaintiff during surgery. Here, Dr. Cocozzo's testimony constitutes mere speculation as to the proximate cause of plaintiff's injuries. For instance, as provided above, during the deposition Dr. Cocozzo testified that he is unable to point to any specific incident or action of any defendant during plaintiff's 9 February 2004 surgery that would have caused plaintiff's injuries. Furthermore, Dr. Cocozzo admits that he presumes defendants were negligent because plaintiff sustained an injury.

Although plaintiff alleged in his complaint that defendants were negligent in padding, positioning, and monitoring his left arm during the 9 February 2004 surgery of his right shoulder, plaintiff's expert does not connect any action or inaction of defendants to the injuries sustained. In fact, the only evidence plaintiff is able to provide in support of his negligence claim is the fact of his injury; and unfortunately, his injury is not the sort that would allow an average juror to determine negligence in the absence of expert testimony. Accordingly, as plaintiff is unable to present a forecast of evidence showing the existence of a genuine issue of material fact, we must affirm the trial court's order of summary judgment as to all defendants.

Affirmed.

Judges ELMORE and STEELMAN concur.