CALABRIA, Judge.
Where plaintiff raises no argument with respect to the hospital defendants, we deem any such argument abandoned, and hold that the trial court did not err in granting a directed verdict in favor of those defendants. Where plaintiff offered no qualified expert testimony to establish medical causation, he failed to meet his burden of establishing that a doctor's alleged breach of duty caused plaintiff's harm. We hold that the trial court did not err in granting a directed verdict in favor of defendants, and we affirm the order of the trial court.
I. Factual and Procedural Background
On 29 September 2015, Steven Grodensky ("plaintiff") filed a complaint against Duke University Health System, Duke University Medical Center, Associated Health Services, Inc., Duke Medicine Global Support Corporation, Duke University School of Medicine Research Foundation, and Private Diagnostic Clinic, PLLC (collectively, "Duke Medicine" or "the Duke Medicine defendants"), and Dr. Roger McLendon ("Dr. McLendon") (collectively, "defendants"), alleging that defendants performed an unnecessary surgery.
According to plaintiff, in November of 2008, Dr. Allan H. Friedman ("Dr. Friedman"), who was not named as a defendant, performed an operation to remove a potentially malignant tumor from the base of plaintiff's skull. Plaintiff subsequently received radiation treatments, and was monitored through periodic MRIs. On 2 May 2013, one such MRI revealed some concerns in plaintiff's left temporal lobe. On 20 May 2013, Dr. Friedman, also an employee of Duke Medicine, performed a biopsy of plaintiff's brain. Dr. McLendon, the neuropathologist involved, confirmed that the tissue sample was adequate. Dr. Friedman obtained two specimens; in his pathology report, Dr. McLendon indicated that one was a glioma, and the other a glioblastoma. Both are considered malignant growths.
Based upon Dr. McLendon's report, Dr. Friedman scheduled plaintiff for surgery. Dr. Friedman removed what he believed was a malignant glioma, along with plaintiff's entire left inferior temporal lobe. Dr. Thomas J. Cummings ("Dr. Cummings") submitted a pathology report for the specimens removed during the surgery, and determined that 90% of the removed tissue showed no obvious abnormality, that 10% showed "necrosis and mild hypercellularity [,]" and that these findings were consistent with radiation effect. Dr. McLendon reported in his pathology report that the brain tissue contained "gliosis, necrosis, macrophages ... and inflammation[.]"
In a subsequent pathology report, Dr. McLendon noted that the original diagnoses of glioma and glioblastoma were "no longer operative [,]" instead noting that they had been revised, that the tissue was "clearly reactive and benign in appearance[,]" and that "technical problems interfered with the interpretation of the original study."
Plaintiff's complaint alleged that, beginning with Dr. Friedman's biopsy, Dr. McLendon was negligent in failing to correctly diagnose plaintiff's brain tissue sample. Plaintiff further alleged that the various Duke Medicine defendants, as Dr. McLendon's employers, were vicariously liable.
On 10 December 2015, defendants filed their answer and motion to dismiss. Defendants moved to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, alleging that several of the Duke Medicine defendants were not health care providers for plaintiff, and were thus improper defendants. Defendants' answer further argued that defendants complied with the standard of care in the industry, that plaintiff's complaint failed to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure, and that plaintiff's failure to provide information to health care providers constituted contributory negligence or a failure to mitigate damages. Defendants therefore sought dismissal of the complaint.
On 13 March 2017, defendants filed a written motion for a directed verdict. Defendants alleged that plaintiff's evidence failed to establish that Dr. McLendon breached the standard of care applicable to a neuropathologist, that plaintiff failed to offer expert testimony regarding proximate cause, and that therefore plaintiff failed to establish gross negligence.
On 29 March 2017, the trial court entered an order on defendants' motion for a directed verdict. The trial court found that plaintiff called only one expert witness at trial, Dr. Clayton Wiley ("Dr. Wiley"), a neuropathologist, who did not testify as to the standard of care applicable to Duke Medicine. The trial court noted that plaintiff had subpoenaed Dr. Friedman, but declined to call him as a witness, and did not produce any expert testimony regarding the cause of Dr. Friedman's recommendation of brain surgery, nor any evidence that Dr. Friedman would not have recommended the surgery had Dr. McLendon otherwise comported himself. The trial court determined, inter alia , that plaintiff failed to present any evidence that Duke Medicine had breached any applicable duty of care owed to plaintiff, and that plaintiff had failed to present any evidence that Dr. McLendon's alleged breach of the applicable duty of care was a proximate cause of plaintiff's surgery or any damage to plaintiff. The trial court therefore granted a directed verdict in favor of defendants.
Plaintiff appeals.
II. Standard of Review
"The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." Davis v. Dennis Lilly Co. , 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991). "In determining the sufficiency of the evidence to withstand a motion for a directed verdict, all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant, giving the non-movant the benefit of every reasonable inference which may legitimately be drawn therefrom and resolving contradictions, conflicts, and inconsistencies in the non-movant's favor." Turner v. Duke Univ. , 325 N.C. 152, 158, 381 S.E.2d 706, 710 (1989).
III. Directed Verdict
In his sole argument on appeal, plaintiff contends that the trial court erred in granting a directed verdict in favor of defendants. We disagree.
A. Duke Medicine
In its order, the trial court held that plaintiff had failed to present sufficient evidence that Duke Medicine had breached any applicable duty of care owed to plaintiff. On appeal, plaintiff raises no argument with respect to the Duke Medicine defendants. Accordingly, we deem any such argument abandoned. N.C.R. App. P. 28(b)(6). We therefore affirm the trial court's order with respect to the Duke Medicine defendants.
B. Dr. McLendon
In its order, the trial court held that plaintiff had failed to present sufficient evidence that Dr. McLendon's erroneous neuropathology was the proximate cause of plaintiff's harm, namely his surgery. In other words, plaintiff had the burden at trial to show that, but for Dr. McLendon's alleged breach of duty of care, plaintiff would not have suffered the harm that he did.
"A medical negligence plaintiff must rely on expert opinion testimony to establish proximate causation of the injury in a medical malpractice action." Hawkins v. Emergency Med. Physicians of Craven Cty., PLLC , 240 N.C. App. 337, 342, 770 S.E.2d 159, 163 (2015). The reasons for this rule are a matter of well-established precedent: courts must rely on medical expertise to explain medical causation, which is a matter removed from lay knowledge. Campbell v. Duke Univ. Health Sys., Inc. , 203 N.C. App. 37, 44, 691 S.E.2d 31, 36 (2010). Therefore, plaintiff had the burden to establish, by way of expert testimony, not only that Dr. McLendon owed and breached a duty of care, but also that the breach of that duty was the proximate cause of plaintiff's harm.
The trial court acknowledged that the testimony of Dr. Wiley, a neuropathologist, was sufficient to establish the duty of care owed by a neuropathologist like Dr. McLendon. However, Dr. Wiley was not qualified by the court to testify as an expert in neurosurgery or surgical procedures. As a neuropathologist, his testimony was limited. He could not offer an expert opinion on the factors influencing a neurosurgeon's decision to operate. In fact, when Dr. Wiley attempted to opine on the decision to perform surgery, the following exchange occurred:
And so while cancer is bad, no one wants cancer in their head, that type of cancer is of a type that you might not want to attempt to surgically remove it because you may cause more trouble.
[COUNSEL]: Objection, motion to strike; exceeds his expertise, Your Honor. He's not a neurosurgeon and not a specialist in neurooncology.
THE COURT: Sustained.
It is therefore clear that Dr. Wiley was admitted solely for his expertise in neuropathology, entailing the processes involved in neuropathology and the duties owed by practitioners in that field. He was not admitted, and not permitted, to testify with respect to neurosurgery or neurooncology.
The trial court noted in its order that plaintiff subpoenaed Dr. Friedman, who-as the neurosurgeon who performed the surgery on plaintiff-could possibly have been tendered as an expert in neurosurgery. However, not only did plaintiff decline to call Dr. Friedman as an expert witness, he declined to call him as a witness at all. Nor did plaintiff call any other expert witness, aside from Dr. Wiley. It is clear, therefore, that plaintiff did not present qualified expert testimony on the issue of causation.
Plaintiff, in his brief, also relies on "lay testimony as evidence of proximate cause." Specifically, he relies upon the testimony of his wife, who testified that, but for Dr. McLendon's misdiagnosis, plaintiff would never have consented to the surgery. However, plaintiff's wife was not tendered as an expert, and despite plaintiff's insistence that her testimony offered a "permissible inference," her testimony does not satisfy the requirement regarding qualified expert testimony to establish medical causation.
Ultimately, the burden was on plaintiff to prove causation. Dr. Wiley was not tendered as an expert on the subject of neurosurgery, and his testimony was therefore inadequate to prove causation. Plaintiff's wife was not tendered as an expert at all, and her testimony was therefore inadequate to prove causation. Plaintiff presented no other expert testimony concerning causation. In the absence of qualified expert testimony establishing causation, we hold that the trial court did not err in holding that plaintiff had failed to show causation, and granting a directed verdict in favor of Dr. McLendon.
AFFIRMED.
Report per Rule 30(e).
Judges BRYANT and HUNTER concur.