IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-910

Filed: 19 May 2020

Pitt County, No. 18-CVS-2376

KIDD CONSTRUCTION GROUP, LLC, ROCKY RUSSELL BUILDERS, INC., and TOMMY WILLIAMS BUILDERS, LLC, Plaintiffs,

v.

GREENVILLE UTILITIES COMMISSION, Defendant.

Appeal by Plaintiffs from order entered 3 June 2019 by Judge Lamont Wiggins in Pitt County Superior Court. Heard in the Court of Appeals 28 April 2020.

*Whitfield, Bryson, and Mason, LLP, by Daniel K. Bryson, Martha A. Geer, Scott C. Harris, and J. Hunter Bryson, for Plaintiffs-Appellants.*

*Hartzog Law Group, LLC, by Dan M. Hartzog, Jr., and Katherine Barber-Jones, for Defendant-Appellee.*

BROOK, Judge.

Kidd Construction Group, LLC, Rocky Russell Builders, Inc., and Tommy Williams Builders, Inc. (collectively "Plaintiffs") appeal from the trial court's order entering summary judgment in favor of Greenville Utilities Commission ("Defendant" or "GUC"). On appeal, Plaintiffs argue that Defendant lacked the authority to charge impact fees for water and sewer services and that the charging of such fees is *ultra vires*. Plaintiffs argue that the trial court erred in concluding otherwise and that we must reverse the trial court's order. For the following reasons, we agree with Plaintiffs.

I. Factual and Procedural Background

The North Carolina General Assembly created GUC, a local government entity ("LGE") in 1991 by passing Session Law 1991-861, "An Act to Amend and Restate the Charter of the Greenville Utilities Commission of the City of Greenville" (the "Charter"). The bill delegated power to GUC for "the proper management of the public utilities of the City of Greenville," including "electric, natural gas, water, and sewer services[.]" GUC provides water and sewer services to all of Pitt County.

GUC's Charter states in pertinent part:

> Sec. 5. The Greenville Utilities Commission shall have entire supervision and control of the management, operation, maintenance, improvement, and extension of the public utilities of the City, which public utilities shall include electric, natural gas, water, and sewer services, and shall fix uniform rates for all services rendered[.] . . .

> Sec. 6. The Greenville Utilities Commission shall employ a competent and qualified General Manager whose duties shall be to supervise and manage the said public utilities, subject to the approval of the Greenville Utilities Commission. The General Manager, under the direction of and subject to the approval of the Greenville Utilities Commission, shall cause the said utilities to be orderly and properly conducted; the General Manager shall provide for the operation, maintenance, and improvement of utilities; the General Manager shall provide for the extension of all utilities, except sewer extensions made beyond the area regulated by the City of Greenville are subject to the approval of the City Council, and shall furnish, on application, proper connections and service to all citizens and inhabitants who make proper application for the same, and shall in all respects provide adequate service for the said utilities to the customers thereof; the General

Manager shall attend to all complaints as to defective service and shall cause the same to be remedied, and otherwise manage and control said utilities for the best interests of the City of Greenville and the customers receiving service, and shall provide for the prompt collection of all rentals and charges for service to customers and shall promptly and faithfully cause said rentals and charges to be collected and received, all under such rules and regulations as the Greenville Utilities Commission shall, from time to time, adopt and in accordance with the ordinances of the City of Greenville in such case made and provided.

Sec. 7. All monies accruing from the charges or rentals of said utilities shall be deposited into the appropriate enterprise fund of the Greenville Utilities Commission and the Greenville Utilities Commission's Director of Finance shall keep an account of the same. . . . [T]he Greenville Utilities Commission shall pay out of its receipts the costs and expense incurred in managing, operating, improving, maintaining, extending, and planning for future improvements and expansions of said utilities; provided, however, that should the funds arising from the charges and rentals of said utilities be insufficient at any time to pay the necessary expenses for managing, operating, improving, and extending said utilities, then and in that event only, the City Council of the City of Greenville shall provide and pay into the appropriate enterprise fund of the Greenville Utilities Commission a sum sufficient, when added to the funds that have accrued from the rents and charges, to pay the costs and expenses of managing, operating, improving, maintaining, extending, and planning for future improvements and expansions of said utilities[.]

An Act to Amend and Restate the Charter of the Greenville Utilities Commission of the City of Greenville, ch. 861, §§ 5-7, 1992 N.C. Sess. Law 370, 373-74 (hereinafter "S.L. 1991-861").

Starting in 2008, at the time of a developer's application for water and sewer service, GUC began requiring contractors and developers of new construction and new developments to pay service connection fees, which consist of two components: a tapping fee and a capacity fee. The tapping fee recovers the cost for physically making a service tap. Capacity fees, or impact fees, are collected in an effort to "recover a proportional share of the cost of capital facilities constructed to provide service capacity for new development or new customers connecting to the water/sewer system." Capacity fees are imposed as a precondition to development approval, to the issuance of building permits, and to receiving service.

In 2016, our Supreme Court decided *Quality Built Homes v. Town of Carthage*, 369 N.C. 15, 789 S.E.2d 454 (2016) ("*Quality Built Homes I*"), which examined the Town of Carthage's authority to impose impact fees on developers as a precondition for the issuance of building permits. The Court concluded that municipalities, including Carthage, did not have the statutory authority to impose impact fees for future services. *Id.* at 20-21, 789 S.E.2d at 458. Subsequent appeals led our Supreme Court to hold that a municipality's liability to refund unlawful impact fee revenue was subject to a three-year statute of limitations. *Quality Built Homes v. Town of Carthage*, 371 N.C. 60, 74, 813 S.E.2d 218, 228-29 (2018) ("*Quality Built Homes II*").

In response to our Supreme Court's holding in *Quality Built Homes I*, on 20 July 2017 the General Assembly enacted the Public Water and Sewer System

Development Fee Act ("the Act" or "System Development Fee Act") to clarify a local government utility's authority to assess upfront charges for water and sewer services. S.L. 2017-138, 2017 N.C. Sess. Laws 996, 996-1002 (codified at N.C. Gen. Stat. § 162A-200–215 (2019)). The law grants local government utilities specific authority to assess one type of upfront charge—a system development fee—as long as that fee is calculated in accordance with the statute's "written analysis" process. N.C. Gen. Stat. § 162A-205 (2019). The Act became effective on 1 October 2017, providing, "Nothing in this act provides retroactive authority for any system development fee, or any similar fee for water or sewer services to be furnished, collected by a local government unit prior to October 1, 2017." S.L. 2017-138 § 11.

After the legislature passed the System Development Fee Act, GUC hired Raftelis Financial Consultants, Inc. ("Raftelis"), an independent financial consultant, to perform the financial study required by N.C. Gen. Stat. § 162A-205. GUC adopted Raftelis's new fee calculation system, which became effective on 1 July 2018.

Plaintiffs are North Carolina licensed general contractors who work in and around the Greenville, North Carolina area. Plaintiffs initiated a class action suit on 24 April 2018, alleging that Defendant lacked the authority to collect impact fees from the three years prior to the commencement of the action, and thus within the three-year statute of limitations period, and sought recovery of all impact fees paid within that time period—totaling $1.2 million dollars. Defendant filed a motion for

summary judgment on 4 March 2019 contending that its Charter authorized GUC to collect impact fees prior to the enactment of the System Development Act. On 20 May 2019, Judge Lamont Wiggins heard arguments on Defendant's motion for summary judgment and entered an order granting summary judgment in favor of Defendant on 3 June 2019.

Plaintiffs timely noticed appeal.

## II. Analysis

On appeal, Plaintiffs argue that the trial court erred by granting Defendant's motion for summary judgment because GUC's Charter does not specifically authorize GUC to charge impact fees for future water and sewer services. Plaintiffs further argue that GUC's Charter only authorizes the charging of uniform rates and charges, not impact fees. Finally, Plaintiffs argue that the charging of impact fees is outside the authority of GUC because these fees are not reasonably necessary or expedient to carry GUC's express powers into execution and effect.

After careful review, we conclude that GUC does not possess the authority to charge impact fees and that the charging of such fees was *ultra vires*. We therefore do not reach Plaintiffs' arguments in the alternative.

## A. Standard of Review

"Summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that any party is entitled to a judgement as a matter of law." *Campbell v. Duke Univ. Health Sys, Inc.*, 203 N.C. App. 37, 42, 691 S.E.2d 31, 35 (2010) (citations and marks omitted). This Court reviews a trial court's ruling on summary judgment de novo. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007). "The *de novo* standard also applies to questions of statutory interpretation." *JVC Enters., LLC v. City of Concord*, ___ N.C. App. ___, ___, 837 S.E.2d 206, 209 (2019). "Under a *de novo* review, th[is C]ourt considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citation and internal marks omitted).

## B. Merits

"The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent." *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 137 (1990). "The best indicia of that intent are the language of the statute . . . , the spirit of the act[,] and what the act seeks to accomplish." *Coastal Ready-Mix Concrete Co., Inc. v. Bd. of Comm'rs*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980). Thus, "[i]n resolving issues of statutory construction, we look first to the language of the statute itself." *Walker v. Bd. of Tr. of the N.C. Local Gov't. Emp. Ret. Sys.*, 348 N.C. 63, 65, 499 S.E.2d 429, 430 (1998) (citation omitted). "When the language of a statute is clear and without

ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required."[1] *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006).

Our Supreme Court's holding in *Quality Built Homes I* is instructive in the case at hand by providing the framework with which we interpret GUC's Charter. In holding that the Town of Carthage lacked the statutory authority to charge prospective fees for water and sewer services, our Supreme Court compared the language of the North Carolina Water and Sewer Authorities Act governing county water and sewer districts with the Public Enterprise Statutes governing cities and towns. 369 N.C. at 20, 789 S.E.2d at 458. The enabling statutes for water and sewer districts included the language "services furnished and *to be furnished*" and thus "plainly allowed the charge for prospective services, which are *not* limited to the financing of maintenance and improvements of *existing* customers[.]" *Id.* (emphasis in original) (citations and marks omitted). The enabling statutes for municipalities, on the other hand, provided that "[a] city may establish and revise . . . rents, rates, fees, charges, and penalties for the use of or the *services furnished* by any public enterprise," *id.* (quoting N.C. Gen. Stat. § 160A-314(a) (2015)) (emphasis added), "[a] city shall have authority to acquire, construct, establish, enlarge, improve, maintain,

---

[1] The rules of statutory construction are equally applicable when analyzing a local act of the General Assembly like GUC's charter. *See, e.g.*, *Lanvale Props., LLC v. Cty. of Cabarrus*, 366 N.C. 142, 164, 731 S.E.2d 800, 815 (2012) ("[a]pplying these rules of statutory construction" when analyzing whether a session law conferred certain authority to a county).

own, operate, and contract for the operation of any or all of the public enterprises . . . to furnish services," *id.* (quoting § 160A-312(a)), "and that 'a city shall have full authority to finance the cost of any public enterprise by levying taxes, borrowing money, and appropriating any other revenues therefor,'" *id.* (quoting § 160A-313).

The Court held that "[t]hese enabling statutes clearly and unambiguously empower Carthage to charge for the contemporaneous use of water and sewer services—not to collect fees for future discretionary spending" because "[a] municipality's ability to establish and revise its various fees is limited to the use of or the *services furnished* by the enterprise, which provisions are operative in the present tense." *Id.* at 20, 789 S.E.2d at 458 (emphasis added) (internal marks omitted). "[U]nlike similar county water and sewer district enabling statutes, the language at issue here fails to authorize Carthage to charge for services '*to be* furnished.'" *Id.* (emphasis in original). "While the enabling statutes allow Carthage to charge for contemporaneous use of its water and sewer systems, the plain language of the Public Enterprise Statutes clearly fails to empower the Town to impose impact fees for future services." *Id.* at 19-20, 789 S.E.2d at 458.

Here, the language in GUC's Charter is nearly identical to that at issue in *Quality Built Homes I.* Section 5 of the Charter provides that

> The Greenville Utilities Commission shall have entire
> supervision and control of the management, operation,
> maintenance, improvement, and extension of the public
> utilities of the City, which public utilities shall include

> electric, natural gas, water, and sewer services, and shall
> fix uniform rates for all *services rendered*[.] . . .

S.L. 1991-861 § 5 (emphasis added). Not only is "services rendered" functionally equivalent to *Quality Built Homes I*'s "services furnished,"[2] it also fails to confer prospective charging authority by lacking the critical "to be" language. *Compare JVC Enters., LLC*, ___ N.C. App. at ___, 837 S.E.2d at 210 (holding that the language "furnished or to be furnished" authorized the levying of prospective fees), *with Quality Built Homes I*, 369 N.C. at 20-21, 789 S.E.2d at 458 (holding that the Public Enterprise Statutes lacked "the essential 'to be' language."). The impact fees at issue here were not charged for contemporaneous services but for future services and therefore required prospective charging power. Just as the "services furnished" language did not empower Carthage to impose impact fees prior to any service being provided, so too does "services rendered" fail to empower GUC to impose impact fees on builders and developers as a condition of final development approval. *See id.* at 22, 179 S.E.2d at 459.

Defendant argues that when sections 5, 6, and 7 of the Charter are read together, GUC possesses the requisite authority to charge impact fees. Defendant

---

[2] "To furnish" means "to provide with what is needed" or to "supply, give," *Furnish*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/furnish (last visited 1 May 2020), while "to render" means "to transmit or deliver," *Render*, *Black's Law Dictionary* (11th ed. 2019); *see also Fid. Bank v. N.C. Dep't of Revenue*, 370 N.C. 10, 19, 803 S.E.2d 142, 149 (2017) ("In the event that the General Assembly uses an unambiguous word without providing an explicit statutory definition, that word will be accorded its plain meaning.").

argues that the Charter specifically authorizes GUC to "collect[] . . . rentals and charges for service to customers," S.L. 1991-861 § 6, and to pay out of such receipts "the cost and expense incurred in managing, operating, improving, maintaining, extending, and planning for future improvements and expansions of said utilities[,]" *id.* § 7. According to Defendant "such language clearly authorizes the collection of fees for future use, in contrast to the language analyzed in *Quality Built Homes*."

While section 5's "services rendered" is not the only reference to GUC's charging authority in the Charter, references elsewhere do not countenance more expansive authority. Section 6, for instance, speaks of GUC's charging authority in terms of "the customers receiving service," not customers who *may* receive service. S.L. 1991-861 § 6; *see also Dunn v. Pac. Emp'rs Ins. Co.*, 332 N.C. 129, 134, 418 S.E.2d 645, 648 (1992) ("Ordinary rules of grammar apply when ascertaining the meaning of a statute[.]"). It goes on to authorize GUC to "pay out of its receipts the cost and expense incurred in managing, operating, improving, maintaining, extending, and planning for future improvements and expansions of said utilities[,]" S.L. 1991-861 § 7, but "rentals and charges for service to customers"—operative in the present tense—form the bases for these "receipts," *not* rentals and charges for service *to be provided* to customers or to customers who *may be served. See Quality Built Homes I*, 369 N.C. at 20, 283 S.E.2d at 458; *see also JVC Enters., LLC*, ___ N.C. App. at ___, 837 S.E.2d at 209-10 (charter authorized charging of fees "to be paid by the owner,

tenant[,] or occupant of each lot or parcel of land which *may be served* by such electrical, sewer[,] and water facilities[.]") (emphasis in original). Moreover, Defendant's argument is indistinguishable from that which our Supreme Court rejected in *Quality Built Homes I*. 369 N.C. at 19, 789 S.E.2d at 458 ("Carthage asserts that . . . it has broad authority to 'collect monies' for the 'operation, maintenance and expansion' of its water and sewer systems, and that such authority extends to the collection of impact fees."). As in *Quality Built Homes I*, GUC's Charter "clearly and unambiguously empower[s] [GUC] to charge for the contemporaneous use of water and sewer services—not to collect fees for future discretionary spending" on water and sewer expansion projects. *Id.*

While the legislature could have included language like "services to be rendered" or "services which may be rendered[,]" or other similar prospective language in GUC's Charter, it did not. And, as our Supreme Court noted in *Quality Built Homes I*, other municipalities had previously sought specific legislative authority to assess impact fees that the Town of Carthage had not. *Id.* at 21, 789 S.E.2d at 459 (citing An Act to Allow the Town of Rolesville to Impose Impact Fees, ch. 996, § 1, 1987 N.C. Sess. Law 178, 178 (enabling Rolesville to "provide by ordinance for a system of impact fees"); An Act Making Sundry Amendments Concerning Local Governments in Orange and Chatham Counties, ch. 460, § 14.1, 1987 N.C. Sess. Laws 609, 613 (same for Pittsboro); An Act to Make Omnibus

Amendments Concerning Local Governments in Orange and Chatham Counties, ch. 936, § 5.34, 1985 N.C. Sess. Laws 221, 221 (same for Chapel Hill)). The language in these special acts specifically authorized the charging of "impact fees to be paid by developers," *see, e.g.*, S.L. 1985-936 § 5.34(a), while GUC's Charter, enacted two to six years after those acts cited above, does not use such language, *see State v. Benton*, 276 N.C. 641, 658, 174 S.E.2d 793, 804 (1970) ("It is always presumed that the legislature acted with care and deliberation and with full knowledge of prior and existing law."). As Plaintiffs noted in their brief to this Court, "If the General Assembly had intended to grant the same powers to GUC as it had previously granted to cities and towns like Chapel Hill, Rolesville, and Pittsboro, it easily could have done so by using the same language in the GUC Charter."

Though GUC's Charter allows it to charge for "services rendered," "the language at issue here fails to authorize [GUC] to charge for services *to be* [rendered]." *Quality Built Homes I*, 369 N.C. at 20, 789 S.E.2d at 458 (emphasis in original). While the Charter "clearly and unambiguously" empowers GUC "to charge for contemporaneous use of its water and sewer systems," it does not contemplate charges for future services. *Id.* And, though the Charter authorizes GUC to pay out its receipts for "extending[] and planning for future improvements and expansions of said utilities," S.L. 1991-861 § 7, that does not change the limited sources through

which those receipts can originate—contemporaneous use.  The impact fees charged by GUC were for future services and, therefore, not authorized by the Charter.

## III. Conclusion

For the above stated reasons, we hold that the trial court erred in granting summary judgment in favor of Defendant.

REVERSED AND REMANDED.

Judges BRYANT and YOUNG concur.