MONA COUSART, INDIVIDUALLY AND AS THE GUARDIAN FOR MINOR CARMEN COUSART; AND
CAMERON COUSART, PLAINTIFFS v. THE CHARLOTTE-MECKLENBURG HOSPI-
TAL AUTHORITY, CAROLINAS PHYSICIANS NETWORK, INC., CHARLOTTE
OBSTETRICS AND GYNECOLOGIC ASSOCIATES, P.A., JOINTLY AND SEVERALLY,
DEFENDANTS

No. COA09-477

(Filed 18 January 2011)

**Medical Malpractice— proximate cause—expert's testimony
contradictory—summary judgment**

> The trial court did not err by granting summary judgment for
> defendants in a medical malpractice action where plaintiffs did
> not forecast evidence showing proximate cause. There were con-
> flicts between the deposition and affidavits of plaintiffs' expert
> that left the trial court with an issue of credibility, not a genuine
> issue of material fact.

Appeal by Plaintiffs from order and judgment dated 1 December
2008 by Judge David S. Cayer in Mecklenburg County Superior Court.
Heard in the Court of Appeals 15 October 2009.

*Charles G. Monnett III & Associates, by Randall J. Phillips, for
Plaintiff-Appellants.*

*Parker Poe Adams & Bernstein LLP, by Harold D. "Chip"
Holmes, Jr., John H. Beyer, and Leigh K. Hickman, for
Defendant-Appellees.*

BEASLEY, Judge.

Mona Cousart (Plaintiff Mona), as the guardian for minor Carmen
Cousart (Plaintiff Carmen), and Cameron Cousart (Plaintiff
Cameron), (collectively Plaintiffs), appeal from an "order and
judgment" granting summary judgment in favor of The Charlotte-
Mecklenburg Hospital Authority d/b/a Carolinas Medical Center
(CMC), Carolinas Physicians Network, Inc. (Carolinas Physicians),
and Charlotte Obstetrics and Gynecologic Associates, P.A. (Charlotte
OB-GYN) (collectively Defendants) and dismissing Plaintiffs' claims,
including four counts of medical negligence and a loss of consortium
claim by Plaintiff Cameron, with prejudice. The dispositive question
in this case is whether there is an issue of material fact concerning
proximate causation. Because Plaintiffs' expert witness provided affi-
davits that contradicted his deposition testimony and are therefore

insufficient to establish that any breaches in the standard of care caused the injuries complained of, and lacking any other expert testimony on this essential element, we affirm the trial court's ruling.

## I. Background

Plaintiffs filed a complaint dated 17 January 2007 against Defendants, seeking redress for medical negligence and alleging the following facts. On 23 September 2003, Plaintiff Mona was admitted to CMC to give birth to Plaintiff Carmen. Plaintiff Mona was in labor when Leslie Hansen-Lindner, M.D., (Dr. Hansen-Lindner), an obstetrician and gynecologist employed with Charlotte OB-GYN and Carolinas Physicians and an agent of CMC, arrived and instructed Plaintiff Mona "to push to deliver the baby." After several minutes of pushing, Plaintiff Mona was having difficulty in delivering Plaintiff Carmen. The complaint further alleges that CMC nurses and Dr. Hansen-Lindner applied fundal pressure on Plaintiff Mona to facilitate delivery of the baby. Dr. Hansen-Lindner, in an attempt to extract Plaintiff Carmen, allegedly placed a Kiwi vacuum on Plaintiff Carmen's head, but the baby's shoulders became lodged in the birth canal. Dr. Hansen-Lindner then applied traction, pulling, rotation, or other mechanical forces to the head and body of Plaintiff Carmen, which resulted in delivery. However, Plaintiff Carmen sustained a brachial plexus/shoulder dystocia injury to her right arm, which Plaintiffs contend was the result of excessive forces applied during the complicated delivery.

Plaintiffs' complaint made a number of allegations of negligence on the part of Dr. Hansen-Lindner and other unnamed nurses and medical staff who assisted her, as employees or agents of Defendants[1] Plaintiffs' primary allegations of negligence which are relevant for purposes of this opinion were that Dr. Hansen-Lindner and/or unnamed medical or nursing personnel of Defendants were negligent in the following ways: telling Plaintiff Mona to push to deliver Plaintiff Carmen; applying fundal pressure to facilitate delivery; pulling Plaintiff Carmen down the birth canal with the vacuum extractor until her shoulders became lodged in the birth canal; applying excessive

---

1. At the summary judgment hearing, Plaintiffs' counsel stated in open court that Plaintiffs were not pursuing allegations of negligence as to Defendants' medical treatment of Plaintiff Mona which resulted in injuries to Plaintiff Mona, which would include Plaintiff Cameron's claim for loss of consortium. Plaintiffs have also not assigned error related to Plaintiff Cameron's claim for loss of consortium in the record on appeal, and no argument was brought forth in Plaintiffs' brief on appeal. This claim is thus deemed abandoned. *See* N.C.R. App. P. 28(b)(6).

traction, pulling, rotation or other mechanical forces to the head and body of Plaintiff Carmen in order to facilitate delivery; failing to properly perform rotational maneuvers for delivering Plaintiff Carmen; failing to recognize the warning signs that Plaintiff Mona's baby would be large; failing to perform adequate ultrasounds; failing to adequately monitor fetal growth; failing to recognize the signs and symptoms of the risk of shoulder dystocia; failing to perform a Caesarean section after it became apparent the labor had stalled and vaginal delivery would not be safe for Plaintiffs Mona and Carmen; failing to use reasonable care and diligence in the treatment of Plaintiffs Mona and Carmen; and failing to practice within the standard of care for an obstetrician in the same or similar community. Plaintiffs alleged that these acts of negligence by Dr. Hansen-Lindner and/or unnamed medical or nursing personnel of Defendants proximately caused Plaintiff Carmen's injuries and have resulted in pain and suffering and medical costs and will require additional medical treatment throughout her life.

On 7 March 2007, Defendants filed an answer, wherein they denied negligence and moved to dismiss the complaint due to Plaintiffs' failure to comply with the requirements of N.C. Gen. Stat. § 1A-1, Rule 9(j). Defendants' answer also included a motion to dismiss the complaint for insufficiency of process and insufficiency of service of process pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(4) and (5) respectively. On 10 August 2007, the trial court entered a discovery scheduling order, setting forth a schedule for the designation of expert witnesses and the completion of discovery for trial. Depositions of the following witnesses were taken: Leslie Hansen-Lindner, M.D.; William MacDonald, M.D.; Robert Wicker, M.D.; Maureen Nelson, M.D.; Ashley Proctor, R.N.; and Amy Petty, R.N. On 14 January 2008, pursuant to the discovery scheduling order, Plaintiffs designated the expert witnesses whom they were likely to call to testify at trial: Martin A. Allen, M.D., a board-certified obstetrician and gynecologist in Lexington, North Carolina; Linda Peterson Walls, R.N., a registered nurse experienced in the fields of labor and delivery; and Anthony M. Gamboa, Jr., Ph.D., M.B.A., an economist expected to offer opinions as to Plaintiff Carmen's vocational impairment. Dr. Allen, Ms. Walls, and Dr. Gamboa were deposed on 18 April 2008, 16 April 2008, and 19 May 2008, respectively. Defendants' expert witnesses, Sandra K. Rayburn, R.N., Ph.D. and Robert K. DeMott, M.D., were deposed on 28 August 2008 and 3 September 2008, respectively.

On 14 October 2008, Defendants filed a motion for summary judgment, which was heard on 20 November 2008. By order dated 1 December 2008, the trial court granted Defendants' motion for summary judgment and dismissed all of Plaintiffs' claims with prejudice. Plaintiffs filed notice of appeal on 29 December 2008.

## II. Standard of Review

Plaintiffs appeal from the order granting summary judgment in favor of Defendants and dismissing Plaintiffs' complaint in its entirety.

> Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). A trial court's grant of summary judgment receives *de novo* review on appeal, and evidence is viewed in the light most favorable to the non-moving party.

*Sturgill v. Ashe Mem'l Hosp., Inc.*, 186 N.C. App. 624, 626, 652 S.E.2d 302, 304 (2007). Upon a motion for summary judgment, "[t]he moving party carries the burden of establishing the lack of any triable issue . . . and may meet his or her burden by proving that an essential element of the opposing party's claim is nonexistent[.]" *Lord v. Beerman*, 191 N.C. App. 290, 293, 664 S.E.2d 331, 334 (2008) (internal quotation marks and citation omitted). If met, the burden shifts to the nonmovant to produce a forecast of specific evidence of its ability to make a *prima facie* case, *Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 705, 708, 582 S.E.2d 343, 345 (2003), *aff'd per curiam*, 358 N.C. 137, 591 S.E.2d 520 (2004), which requires medical malpractice plaintiffs to prove, in part, that the treatment caused the injury. Not only must it meet our courts' definition of proximate cause, but evidence connecting medical negligence to injury also "must be probable, not merely a remote possibility." *White v. Hunsinger*, 88 N.C. App. 382, 387, 363 S.E.2d 203, 206 (1988).

## III. Discussion

In their sole argument on appeal, Plaintiffs contend that "the trial court committed reversible error when it allowed Defendants' motion for summary judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 56" because expert witness deposition testimony established proximate causation of the injury to Plaintiff Carmen. We disagree.

A medical negligence plaintiff must offer evidence that establishes the following essential elements: "(1) the applicable standard of care; (2) a breach of such standard of care by the defendant; (3) the injuries suffered by the plaintiff were proximately caused by such breach; and (4) the damages resulting to the plaintiff." *Purvis v. Moses H. Cone Mem'l Hosp. Serv. Corp.*, 175 N.C. App. 474, 477, 624 S.E.2d 380, 383 (2006) (internal quotation marks and citation omitted). This Court has defined proximate cause as

"a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed."

*Williamson v. Liptzin*, 141 N.C. App. 1, 10, 539 S.E.2d 313, 319 (2000) (quoting *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984)) (citation omitted). Whether medical negligence plaintiffs can show causation depends on experts. *See Azar v. Presbyterian Hosp.*, 191 N.C. App. 367, 371, 663 S.E.2d 450, 453 (2008), *disc. review denied*, 363 N.C. 372, 678 S.E.2d 232 (2009). For, expert opinion testimony is required to establish proximate causation of the injury in medical malpractice actions. *See Smithers v. Collins*, 52 N.C. App. 255, 260, 278 S.E.2d 286, 289 (1981) (noting that in many medical negligence cases "there is a requirement that expert testimony is needed to establish the standard of care and the proximate cause of the plaintiff's injury" because such expert testimony is generally necessary "when the standard of care and proximate cause are matters involving highly specialized knowledge beyond the ken of laymen"). While proximate cause is often a factual question for the jury, evidence "based merely upon speculation and conjecture . . . is no different than a layman's opinion, and as such, is not sufficiently reliable to be considered competent evidence on issues of medical causation." *Gaines v. Cumberland County Hosp. Sys., Inc.*, —— N.C. App. ——, ——, 692 S.E.2d 119, 123 (2010) (internal quotation marks and citation omitted); *see also Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000) ("[Our Supreme] Court has specifically held that an expert is not competent to testify as to a causal relation which rests upon mere speculation or possibility." (internal quotation marks omitted)).

Thus, Plaintiffs must be able to make a prima facie case of medical negligence at trial, which includes articulating proximate cause with

specific facts couched in terms of probabilities. However, it is well-established that "a party opposing a motion for summary judgment cannot create a genuine issue of material fact by filing an affidavit contradicting his prior sworn testimony." *Pinczkowski v. Norfolk S. Ry. Co.*, 153 N.C. App. 435, 440, 571 S.E.2d 4, 7 (2002) (citations omitted); *see also Carter v. West Am. Ins. Co.*, 190 N.C. App. 532, 539, 661 S.E.2d 264, 270 (2008) ("A non-moving party cannot create an issue of fact to defeat summary judgment simply by filing an affidavit contradicting his prior sworn testimony." (internal quotation marks omitted)). While Plaintiffs contend that the affidavits of expert witness Dr. Allen were sufficient to survive summary judgment on the issue of proximate cause, Defendants contend that Dr. Allen's affidavits do not create a genuine issue of material fact with respect to proximate cause because his deposition testimony contradicts his affidavits and the affidavits should not be considered.[2] As further discussed below, because of this rule regarding contradictory testimony, we agree with Defendants that the expert opinions offered by Plaintiff regarding the standard of care and causation—in the form of the two affidavits from Dr. Allen—are insufficient to demonstrate proximate causation.

Plaintiffs submitted two affidavits from Dr. Allen: the first, dated 18 December 2006, addressed his qualifications as an expert witness and his summary opinions regarding Plaintiffs' case, and the second affidavit, dated 18 November 2008, was prepared after Dr. Allen's deposition. Plaintiffs argue that if Dr. Allen did not establish proximate causation in his deposition testimony, his second affidavit did establish proximate causation. Defendants counter, however, that portions of Dr. Allen's 18 April 2008 deposition are contrary to statements in his 18 November 2008 affidavit regarding causation; thus, Dr. Allen could not testify that Defendants' care proximately caused Plaintiffs' injuries.

During the 18 April 2008 discovery deposition taken by defense counsel, the following testimony was elicited:

---

2. We note that Defendants did not file a motion to strike Dr. Allen's second affidavit. As a general rule, a party's failure to move to strike an affidavit's "allegations waives any objection to their formal defects." *Whitehurst v. Corey*, 88 N.C. App. 746, 748, 364 S.E.2d 728, 729-30 (1988) (stating that "failure to object to form or sufficiency of pleadings and affidavits waives objection on summary judgment" and an "affidavit not conforming to Rule 56(e) is subject to motion to strike," but objection is waived absent the motion). However, the issues arising from Dr. Allen's deposition and second affidavit were argued extensively before the trial court at the summary judgment hearing, and Plaintiffs did not contend either before the trial court or before this Court that Defendants should have been required to file a motion to strike the affidavit.

COUSART v. CHARLOTTE-MECKLENBURG HOSP. AUTH.

[209 N.C. App. 299 (2011)]

[Defense Counsel]: You would agree with me that a branchial plexus injury can occur for any number of reasons?

[Dr. Allen]: Correct.

Q.: You would agree with me that a brachial plexus injury can occur in the absence of shoulder dystocia, correct?

A.: It's been reported.

Q.: Would you agree with me that you can't say to any reasonable degree of medical certainty as you sit here today that fundal pressure was actually and truthfully applied in this case, can you?

. . . .

A.: I wasn't there.

Q.: And you can't say to any reasonable degree of medical certainty as you sit here today that if fundal pressure was applied when shoulder dystocia was encountered with this delivery, that it caused the brachial plexus injury, can you?

. . . .

A.: I don't think anybody can say that.

In his 18 November 2008 affidavit, Dr. Allen stated his opinion regarding the causes of Plaintiff Carmen's injuries:

5. Similarly, it was and always has been my opinion that the inappropriate prenatal care and management of labor and delivery by the Defendants more likely than not caused or contributed to the permanent brachial plexus injury sustained by Carmen Cousart.

. . . .

7. When I was asked during my deposition about whether these departures from the standard of care caused Carmen Cousart's brachial plexus injury, I was unable to state whether, for example, fundal pressure was the cause, in and of itself and to the exclusion of other factors. However, if, as has since been clarified to me by counsel, the legal standard is whether these departures from the standard of care were a cause or substantial contributing factor to Carmen's brachial plexus injury, then I am of the opinion that these departures from the standard of care were a cause or contributing factor to Carmen Cousart's brachial plexus injury.

8. With regard to the use of fundal pressure, it is my opinion, more likely than not, and to a reasonable degree of medical certainty, that under circumstances like those during Mrs. Cousart's delivery of Carmen, the use of fundal pressure would likely increase the degree of shoulder impaction and be a cause or substantial contributing factor to her resulting brachial plexus injury.

The first affidavit made in 2006 mentions causation in only general terms and opines in conclusory fashion that an unidentified "violation of the standard of care was the proximate cause of the injuries." Lacking competent evidence of proximate cause for failure to "point to any specific incident or action of any defendant during [labor and delivery] that would have caused [the injuries]," *Campbell v. Duke Univ. Health Sys.*, —— N.C. App. ——, ——, 691 S.E.2d 31, 37 (2010), this affidavit is also negated by Dr. Allen's detailed deposition testimony of 18 April 2008 recited above. Moreover, his 2008 affidavit, made just two days before the summary judgment hearing, clearly contradicts his deposition. A Fourth Circuit case with similar facts is persuasive. In *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970 (4th Cir. 1990), medical expert Dr. Cox testified on deposition to possible ways that DTP vaccine may cause neurological damage but declined to give an opinion that the defendant's vaccine caused the plaintiff's particular injuries. *Id.* at 974. The Fourth Circuit noted summary judgment would be "unproblematic" if limited to the deposition testimony lacking sufficient proximate cause testimony, but the plaintiffs attached an affidavit to their response to the summary judgment motion, wherein Dr. Cox stated: "It is my opinion that the DPT vaccine administered to [plaintiff] . . . caused the neurological injuries from which she has suffered and continues to suffer." *Id.* at 974-75. While "[t]his statement alone would appear to defeat defendant's motion for summary judgment," the court concluded that "Dr. Cox's affidavit is in such conflict with his earlier deposition testimony that the affidavit should be disregarded as a sham issue of fact" because "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Id.* at 975 (citation omitted).

Our Court has also addressed whether a party opposing summary judgment can create a genuine issue of fact by filing an affidavit contradicting prior sworn testimony, and answered alike:

[A] party should not be allowed to create an issue of fact in this manner and [we] hold that contradictory testimony contained in

an affidavit of the nonmovant may not be used by him to defeat a summary judgment motion where the only issue of fact raised by the affidavit is the credibility of the affiant. . . . If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

*Mortgage Co. v. Real Estate, Inc.*, 39 N.C. App. 1, 9-10, 249 S.E.2d 727, 732 (1978) (internal quotation marks omitted). Dr. Allen's second affidavit greatly contradicts his deposition testimony. After detailing various standards and *possible* theories by which breaches thereof *could* cause injuries, Dr. Allen refused, when directly questioned about causation *in this case*, to opine that a causal link existed between any breach and Plaintiff Carmen's symptoms. *Cf. Rohrbough*, 916 F.2d at 975. "Yet months later, when faced with [Defendants'] motion for summary judgment, Dr. [Allen] boldly gave his opinion by way of affidavit that the [inappropriate management of labor and delivery by Defendants] caused the injuries in question." *Id.* Contradicting several assertions he made during deposition on the same subject matter, Dr. Allen's second affidavit cannot be considered.

On deposition, Dr. Allen remained vague, answering, "I wasn't there," and "I don't think anybody can say that," respectively, when asked, to a reasonable degree of medical certainty, whether fundal pressure was actually applied, and if so, whether it caused the injuries alleged. Significantly, Dr. Allen then stated:

[W]hen you tease apart individual pieces of . . . the delivery you can find lots of areas to criticize. *One will never know, one can only speculate, what had to do with what.* In other words, did the fundal pressure cause the brachial plexus injury? *You got no way of knowing.* . . . .

What you do know is, is there's some things that happened that *may or may not have* **contributed**. And *one will never know* if using the vacuum . . . **contributed**. *One will never know if fundal pressure, given or not given,* **contributed**.

He admitted only that some things should not have happened and "some things that didn't happen . . . should have" but followed: "[D]o any of those things prevent a brachial plexus injury? *You've got no way of knowing.*" When asked if any evidence suggested "application of the Kiwi vacuum *caused or contributed to* the brachial plexus

injury," Dr. Allen responded, "[t]here's no way to do that." Thus, we distinguish our holding in *Phillips v. Triangle Women's Health Clinic, Inc.*, 155 N.C. App. 372, 573 S.E.2d 600 (2002), where the plaintiff's expert testified on deposition that he did not give his opinion over the phone but, in a subsequent affidavit, stated that he did so. *See Phillips*, 155 N.C. App. at 377, 573 S.E.2d at 603 (holding "there was no clear contradiction" in the exeprt's deposition and later filed affidavit because he testified in terms of "probabilities," never denied giving his opinion, and "[a]fter having time to reflect on that conversation," clarified what he recalled in his subsequent affidavit). To the contrary, Dr. Allen did not testify in terms of probabilities but, rather, affirmed that "no one will ever know" and ruled out any way of knowing the cause of Plaintiff Carmen's injuries.

The entire deposition shows repeatedly that when questioned directly as to the cause of Plaintiff Carmen's injuries, Dr. Allen could not opine that a causal link existed between any particular act or omission. Impliedly, any subsequent, purportedly firm opinion by Dr. Allen on causation would not only be conjecture but would also directly belie his testimony that it is virtually impossible to know if the alleged breaches in care proximately caused the injuries sustained. Thus, it is difficult to see how the statement, "it was and always has been my opinion that the inappropriate prenatal care and management of labor and delivery by the Defendants more likely than not caused or contributed to the permanent brachial plexus injury," in Dr. Allen's 2008 affidavit does not plainly contradict his deposition. Plaintiff's argument is based on an unsubstantiated premise that the deposition failed only to assign a *sole* cause while the affidavit pointed to *a* cause or contributing factors. The above-quoted deposition testimony, however, contains not one question framed in terms of "sole cause," nor did Dr. Allen ever respond accordingly. To the contrary, the record shows that defense counsel employed the phrase "caused or contributed to" at least once and Dr. Allen understood his questions to encompass *a* cause or contributing factor, as reflected by his own use of those terms. Moreover, Plaintiffs' counsel tried to correct Dr. Allen by asking whether he had the opinion that the breaches of care he had described "were *a* cause or *substantial contributing factor* to the . . . injuries sustained by the baby in this case *compared to the sole cause*." Dr. Allen relayed the difficulty of knowing if "one factor or several" caused the injuries, and Plaintiffs' counsel rephrased: "did they alone or in combination form a cause or contributing factor to the injury in this case more likely than not?" Dr.

Allen reiterated his refusal to articulate an opinion, and *Rohrbough* is again instructive:

> The [deposition] questions admittedly were propounded in terms of a somewhat higher standard of proof than plaintiffs must satisfy. . . . Although it stretches the imagination to say that [the expert's] testimony would have been any different had the questions incorporated a differing standard of proof, that is, that she would have given her opinion that the vaccine was the reasonably probable cause in spite of her testimony that she could not determine a cause to a reasonable degree of medical certainty, we need not rely on intuition. The question is not what she would have said, but what she did say . . . .

*Rohrbough*, 916 F.2d at 973.

We acknowledge that Dr. Allen was asked whether fundal pressure, if applied, *caused* the injury and that a question framed in terms of *a* cause or contributing factor would have been more exact. We should not, however, dismiss the expert's intelligence or accept his attestation that his deposition answers were limited to whether each departure from the standard of care "was the cause, in and of itself and to the exclusion of other factors." Dr. Allen was never questioned this way; moreover, the claim in his affidavit that the proper legal standard was only later clarified to him by counsel cannot conceal his own answers on deposition framed in terms of contributing causes. The question is what Dr. Allen did say, and he asserted several times that "one will never know" if the subject breach *contributed* to the injuries.

The conflicts between Dr. Allen's deposition and affidavits, particularly the second one filed to survive summary judgment, leave the trial court with only a credibility issue, not a genuine issue of material fact. For, it is improper to consider the second affidavit, without which, summary judgment becomes "unproblematic." Where Defendants met their burden by negating an essential element of Plaintiffs' proof, Plaintiffs failed to "come forward with competent evidence that raises a genuine issue of material fact on that element." *White*, 88 N.C. App. at 386, 363 S.E.2d at 206. As to causation, no expert, including Dr. Allen, could speak in terms of probabilities or raise more than a conjecture based on speculation, and nothing in their combined testimony differs from a layman's opinion on medical causation. Therefore, no proximate cause evidence submitted by Plaintiffs was sufficiently reliable to be considered competent.

ROBINSON v. BRIDGESTONE/FIRESTONE N. AM. TIRE, L.L.C.

[209 N.C. App. 310 (2011)]

Because Plaintiffs have failed to forecast any evidence showing proximate cause, leaving the trial court with no genuine issue of material fact, we affirm the trial court's grant of summary judgment for Defendants.

Affirmed.

Judges STEPHENS and STROUD concur.