IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1107

Filed: 6 October 2020

Cumberland County, No. 17 CVS 7810

THOMAS MCDONALD, Plaintiff

v.

SAIRA H. SAINI, M.D. FACS; and CAROLINA PLASTIC SURGERY OF FAYETTEVILLE, PC, Defendants

Appeal by Plaintiff from Order entered 13 May 2019 by Judge Gale M. Adams in Cumberland County Superior Court. Heard in the Court of Appeals 12 August 2020.

*Michael R. Porter and Reed N. Noble, for plaintiff-appellant.*

*Batten Lee, PLLC, by Gloria T. Becker and Arienne P. Blandina, for defendants-appellees.*

HAMPSON, Judge.

**Factual and Procedural Background**

Thomas McDonald (Plaintiff) appeals from an Order entered 13 May 2019 granting summary judgment in favor of Defendants Saira H. Saini M.D., FACS, (Dr. Saini) and Carolina Plastic Surgery of Fayetteville (collectively, Defendants) in this medical malpractice action. The Record before us tends to show the following:

On 28 May 2014, Plaintiff visited Dr. Saini at Carolina Plastic Surgery for a consultation regarding his concerns over the appearance of his chest. Dr. Saini

determined Plaintiff would be a good candidate for a bilateral chest liposuction. Plaintiff again met with Dr. Saini on 30 September 2014, and 28 October 2014, to review the plan for Plaintiff's procedure and answer any related questions. Plaintiff's surgery was scheduled for 31 October 2014, at Highsmith-Rainey Specialty Hospital in Fayetteville, North Carolina.

As scheduled, on 31 October 2014, Dr. Saini performed a bilateral chest liposuction as a part of revision gynecomastia surgery on Plaintiff at Highsmith-Rainey Hospital. Plaintiff was discharged later that afternoon and his follow-up appointment with Dr. Saini was scheduled for 4 November 2014. At Plaintiff's follow-up appointment on or about 4 November 2014, Plaintiff removed his bandages and discovered what he described as big, purplish black blisters across his chest that appeared to be filled with pus. Plaintiff continued to see Dr. Saini for post-operative care, which included injections and laser treatment for scar therapy, until March 2015.

After believing his continuing treatment with Dr. Saini was not improving the condition of his chest, in April 2015, Plaintiff met with Malcom W. Marks, M.D. (Dr. Marks), a plastic and reconstructive surgeon at Wake Forest Baptist Medical Center in Winston Salem, North Carolina, regarding his scarring. Ultimately, in February of 2017, Plaintiff underwent a second procedure with Dr. Marks to reduce the

visibility and severity of his scarring. As Plaintiff's treating physician, Dr. Marks testified Plaintiff had keloids and hypertrophic scarring.

On 27 February 2018, Plaintiff filed a Complaint alleging several medical malpractice claims against Dr. Saini and Carolina Plastic Surgery of Fayetteville.[1] Relevant to this appeal, Plaintiff's Medical Negligence Claim alleged Dr. Saini:

> a. Failed to use proper surgical techniques . . . thereby causing third degree full thickness burns and permanent scars;
>
> b. Failed to ensure that the surgical equipment she was utilizing was in proper working order . . . ;
>
> c. Failed to ensure that proper procedures were followed to prevent burning to include, inter alia, the proper injection of fluids so as to prevent burns[;]
>
> d. Failed to ensure that the equipment that she was utilizing was not overheating or set to a heat level that was too high to be used upon the Plaintiff;
>
> e. . . . [F]ailed to properly supervise the nurses and/or other operating room support staff . . . to ensure that they were properly following procedures and protocol to prevent burns . . . .

Plaintiff sought compensatory and punitive damages. Defendants accepted service on 13 March 2018, and filed their Answer and Motion to Dismiss Plaintiff's Complaint on 14 May 2018.

---

[1] Plaintiff's Complaint also named as Defendants the Cumberland County Hospital System, Inc. d/b/a Cape Fear Valley Health System, Amy L. Lovingood, John Harden, and Kathryn Jordan; however, Plaintiff dismissed his claims against them as Defendants with prejudice on 3 August 2018.

Also on 14 May 2018, Defendants filed a Motion for Summary Judgment (Motion) arguing they were entitled to summary judgment as a matter of law because Plaintiff could not establish Defendants breached the applicable standard of care and Plaintiff had not presented evidence of a genuine issue of material fact "linking any alleged act or omission on the part of the Defendants to a cause of Plaintiff's injury." Plaintiff submitted evidence in response to Defendants' Motion, including Plaintiff's medical records and depositions from Dr. Saini, Plaintiff, Dr. Marks, surgical technicians Kathryn Jordan (Jordan) and John Harden (Harden), circulating nurse Amy Lovingood (Lovingood), and Dr. Detlev Erdmann (Dr. Erdmann), Plaintiff's designated expert witness.

Dr. Saini testified during her deposition she performed a bilateral chest liposuction on Plaintiff to remove excess fatty tissue from his chest. Dr. Saini testified she used an Aspirator II liposuction machine for Plaintiff's procedure, which is a suction device. The Operating Room Report (OR Report), included as part of Plaintiff's medical records, did not reflect any heat source was used during Plaintiff's procedure. It identified an electrocautery device known as a "Bovie" and an "Aspirator II" liposuction machine were present in the OR at the time of the procedure. Dr. Saini also testified no heat source was used during the procedure, and she reiterated it is standard for a Bovie to be present in the OR.

Depositions taken from Lovingood, Harden, and Jordan—all present during Plaintiff's procedure—reflected it was standard procedure for a Bovie to be present in the OR regardless of whether it is expected to be used in the procedure. Lovingood, Harden, and Jordan each testified Highsmith-Rainey Hospital did not have a laser-assisted liposuction machine, which uses a heat source, at the time of Plaintiff's procedure.

Plaintiff's expert witness, Dr. Erdmann, is a board-certified plastic surgeon and professor at Duke University School of Medicine. Dr. Erdmann testified during his deposition Plaintiff's hypertrophic scarring was the result of burns Plaintiff obtained during the procedure. Dr. Erdmann testified hypertrophic scarring, such as Plaintiff's, was usually the result of trauma or burns but could also occur in the absence of physician negligence and with the best of care. In this case, it was Dr. Erdmann's opinion Dr. Saini breached the standard of care owed to Plaintiff on the basis of Plaintiff's "excessive scarring outside the surgical field." Dr. Saini's counsel requested Dr. Erdmann "pinpoint to anything that Dr. Saini did or did not do that caused the third-degree burns or excessive scarring[,]" however, Dr. Erdmann stated: "I cannot pinpoint this. It would be pure speculation."

Dr. Erdmann further testified burns, such as Plaintiff's, commonly require a heat source. Dr. Erdmann's two theories for Plaintiff's burns were either "a[n] internal heat source," such as a laser-assisted liposuction machine or an

electrocautery device, or an external heat source, "such as a fire in the operating room." Dr. Erdmann conceded an electrocautery device would be an "unlikely" source for Plaintiff's alleged burns and that there was no indication the electrocautery device was used. Dr. Erdmann also agreed such device is routinely in an operating room. When questioned by Defendants' counsel that it was "just speculation that they're burns, correct?" Dr. Erdmann answered: "Um-hmm, absolutely, yeah." In an exchange with Plaintiff's own counsel Dr. Erdmann reiterated his theories about the burns "are speculation because [he] couldn't find any -- anything in the medical record that would explain the burns." Dr. Erdmann was also unable to exclude the possibility of something happening after Plaintiff's surgery.

On 29 April 2019, the trial court heard arguments on Defendants' Motion, and on 13 May 2019, the trial court entered its written Order granting Summary Judgment in favor of Defendants on all Plaintiff's remaining claims. Plaintiff timely filed written Notice of Appeal on 12 June 2019.

## Issue

On appeal, the issue before this Court is whether the trial court properly granted summary judgment in favor of Defendants on the basis Plaintiff's expert testimony was insufficient to establish any genuine issue of material fact as to whether Dr. Saini breached the applicable standard of care during her surgery on Plaintiff proximately causing Plaintiff's injuries.

## Analysis

### I. Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citations and quotation marks omitted). "Upon a motion for summary judgment, the moving party carries the burden of establishing the lack of any triable issue and may meet his or her burden by proving that an essential element of the opposing party's claim is nonexistent." *Hawkins v. Emergency Med. Physicians of Craven Cnty., PLLC*, 240 N.C. App. 337, 341, 770 S.E.2d 159, 162 (2015) (alterations, citations, and quotation marks omitted). "If met, the burden shifts to the nonmovant to produce a forecast of specific evidence of its ability to make a *prima facie* case, which requires medical malpractice plaintiffs to prove, in part, that the treatment caused the injury." *Cousart v. Charlotte-Mecklenburg Hosp. Auth.*, 209 N.C. App. 299, 302, 704 S.E.2d 540, 543 (2011) (citations omitted).

### II. Medical Negligence

In a medical malpractice action, a plaintiff has the burden of showing (1) the applicable standard of care; (2) a breach of such standard of care by the defendant; (3) the injuries suffered by the plaintiff were proximately caused by such breach; and (4) the damages resulting to the plaintiff.

*Purvis v. Moses H. Cone Mem'l Hosp. Serv. Corp.*, 175 N.C. App. 474, 477, 624 S.E.2d 380, 383 (2006) (citations and quotation marks omitted). "[E]xpert opinion testimony is required to establish proximate causation of the injury in medical malpractice actions." *Cousart*, 209 N.C. App. at 303, 704 S.E.2d at 543. However, "[a]n expert is not competent to testify as to a causal relation which rests upon mere speculation or possibility." *Hawkins*, 240 N.C. App. at 342, 770 S.E.2d at 163 (citations and quotation marks omitted). "Not only must it meet our courts' definition of proximate cause, but evidence connecting medical negligence to injury also must be probable, not merely a remote possibility." *Cousart*, 209 N.C. App. at 302, 704 S.E.2d at 543 (citation and quotation marks omitted). Accordingly, "Plaintiffs are required to make a *prima facie* case of medical negligence during a summary judgment hearing, 'which includes articulating proximate cause with specific facts couched in terms of probabilities.' " *Hawkins*, 240 N.C. App. at 342, 770 S.E.2d at 163 (citing *Cousart*, 209 N.C. App. at 303-04, 704 S.E.2d at 343).

In the present case, Defendants moved for summary judgment on the basis Plaintiff did not forecast evidence Defendants breached the applicable standard of care or that Dr. Saini's alleged breach proximately caused Plaintiff's injury. The trial court, concluding there was no genuine issue of material fact, granted Defendants' Motion. On appeal, Plaintiff contends an issue of material fact exists regarding

whether Dr. Saini used a "Vaser" or heat-assisted laser liposuction machine.[2] Plaintiff relies solely upon Dr. Erdmann's deposition testimony to support this argument. However, Dr. Erdmann's deposition testimony is—in his own words— speculative.

Dr. Erdmann agreed there was nothing in Plaintiff's medical records that would explain the presence of his burns. When asked by Defendants' counsel: "And you don't have any direct evidence that the vaser or a laser-assisted liposuction was used or an electrocautery was used other than your speculation that the resultant scars are from burns?" Dr. Erdmann conceded, "Correct. . . . I believe these are burns and I don't know what caused the burns." Meanwhile, Dr. Saini, Jordan, Harden, and Lovingood testified there was no Vaser liposuction machine available at Highsmith-Rainey Hospital and no fire occurred in the operating room. The parties do not dispute a Bovie was present during Plaintiff's procedure; however, the deposition testimony of Dr. Saini, Lovingood, Harden and Jordan, established it was standard protocol to have one available and, further, Dr. Saini did not use the Bovie. Dr. Erdmann further conceded it was an unlikely source of the burns.

Plaintiff argues a gap in the OR Report creates a question of material fact because Dr. Erdmann testified: "I reviewed the OR Report, and when I reviewed the

---

[2] Dr. Erdmann testified a "Vaser" is "the most well-known company or type of machine" associated with laser-assisted liposuction and explained laser-assisted liposuction combines "a heating source that is entertained by a laser, and the idea behind it is to melt down tissue that cannot be removed with conventional liposuction only."

OR Report, there is a gap in the OR Report as such as somebody erased something, and it would fit with, *I can only speculate*, the term [V]aser." (emphasis added). The parties do not dispute the presence of a blank in the OR Report where Dr. Saini described: "After waiting an appropriate amount of time for the epinephrine and lidocaine to work, a [blank] liposuction was used." However, Plaintiff does not forecast any evidence a laser-assisted liposuction machine was available at Highsmith-Rainey Hospital, and further, that such device was used during Plaintiff's procedure. Instead, Dr. Saini, Harden, Jordan, and Lovingood all testified there was no Vaser available at Highsmith-Rainey Hospital at the time of Plaintiff's procedure. Further, Plaintiff's medical records, as included in the Record, reflect the liposuction machine used was an "Aspirator II" model, which Dr. Erdmann admitted does not use heat.

It is well established a forecast of specific facts supporting proximate cause is required for a plaintiff to survive a motion for summary judgment in a medical malpractice action. *Hawkins*, 240 N.C. App. at 341-42, 770 S.E.2d at 162-63. Moreover, "evidence connecting medical negligence to injury also must be probable, not merely a remote possibility." *Cousart*, 209 N.C. App. at 302, 704 S.E.2d at 543 (citation and quotation marks omitted). Thus, where a plaintiff is unable to forecast specific facts supporting proximate cause, this Court has held summary judgment proper. *See Kenyon v. Gehrig*, 183 N.C. App. 455, 459, 645 S.E.2d 125, 128 (2007)

(affirming summary judgment in favor of the defendants where "several theories [were] presented to show that defendants *could* have been negligent[,]" yet "all of plaintiff's expert witnesses based their opinions only on the fact of the injury itself; their assignation of negligence on defendants' part constituted mere speculation"); *see also Campbell v. Duke Univ. Health Sys., Inc.*, 203 N.C. App. 37, 45, 691 S.E.2d 31, 36-37 (2010) (affirming summary judgment and concluding "plaintiff [was] unable to present a forecast of evidence showing the existence of a genuine issue of material fact" where the plaintiff's expert testimony "constitute[d] mere speculation as to the proximate cause of plaintiff's injuries").

In the case *sub judice*, there is no testimony from Dr. Erdmann—Plaintiff's sole expert witness—identifying a negligent act that likely caused Plaintiff's injury. Instead, Dr. Erdmann testified hypertrophic scarring can occur in the absence of physician negligence. Although Dr. Erdmann hypothesized two theories for Plaintiff's alleged burns, he conceded his theories were based on speculation. Additionally, when Dr. Saini's counsel asked Dr. Erdmann if he could "exclude the possibility of something happening after the surgery?" Dr. Erdmann answered, "I cannot exclude anything."

Defendant cites this Court's unpublished opinion in *Williams v. Humphreys* and contends Dr. Erdmann was making a differential diagnosis, thereby ruling out the possibility of other causes for Plaintiff's injuries. 227 N.C. App. 456, 744 S.E.2d

496 (2013) (COA 12-814) (unpublished). In *Williams*, this Court reversed the trial court's grant of summary judgment in favor of the defendants, concluding there was "sufficient evidence of causation to give rise to a genuine issue of material fact." *Id.* (slip op. at 15). However, in *Williams*, the plaintiff's experts "considered the nature of the injury to identify possible causes of that injury, including analysis of medical literature relating to that type of injury; eliminated unlikely causes; and reached opinions that the likely cause was improper positioning of [the plaintiff] during the surgery." *Id.* (slip op. at 13). The *Williams* Court distinguished *Kenyon* and *Campbell* on the basis the plaintiff "presented expert testimony—and an admission from one of the defendants—identifying the precise allegedly negligent act that likely caused the injury[.]" *Id.* (slip op. at 12). In the present case, and unlike the experts' testimony in *Williams*, Dr. Erdmann did not eliminate unlikely causes of Plaintiff's injury and, in fact, concedes multiple times much of his opinion is based on speculation. Moreover, Dr. Erdmann did not identify "a precise allegedly negligent act" by Dr. Saini that likely caused Plaintiff's injuries. *Id.*

Thus, Dr. Erdmann's expert testimony, required to establish Plaintiff's *prima facie* case of medical negligence, fails to articulate any negligent act or omission by Defendants that proximately caused Plaintiff's injury beyond mere speculation. *Hawkins*, 240 N.C. App. at 342, 770 S.E.2d at 163 (citation and quotation marks omitted). Accordingly, Plaintiff did not meet his burden to forecast specific facts Dr.

Saini breached the applicable standard of care and was the proximate cause of Plaintiff's injury. The trial court's grant of summary judgment in favor of Defendants was proper.

## **Conclusion**

Accordingly, for the foregoing reasons, the trial court's Order is affirmed.

AFFIRMED.

Judges MURPHY and YOUNG concur.