IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-524

Filed 4 February 2026

Forsyth County, No. 22CVS005724-330

MICHAEL EUGENE GRIFFIN, Plaintiff,

v.

KENNETH R. BROWN, DDS; UNIVERSITY DENTAL ASSOCIATES; SCOTT F.
TUCKER, DDS, MS, PA d/b/a UNIVERSITY DENTAL ASSOCIATES and/or UDA
DENTAL and/or UDA and/or UDA-COMP REHAB, Defendants.

Appeal by plaintiff from judgment entered 15 October 2024 by Judge John O.

Craig III in Forsyth County Superior Court. Heard in the Court of Appeals 14

January 2026.

*Angela Gray Law, P.A., by Angela N. Gray, for the plaintiff-appellant.*

*Cranfill Sumner LLP, by Samuel H. Poole, Jr., Steven A. Bader, and Kelley M.
Petcavich, for the defendants-appellees.*

TYSON, Judge.

Michael Eugene Griffin ("Plaintiff") appeals from order of summary judgment

dismissing all of Plaintiff's negligence claims with prejudice entered for all individual

and corporate Defendants on 15 October 2024. We affirm.

## I. Background

Plaintiff presented to least fourteen doctors' appointments with various

Defendant physicians and facilities from June 2020 to May 2021.

## A. Year of 2020

Plaintiff saw Dr. John Byers, an otolaryngologist, a specialist in ear, nose, and throat, for fluid build-up in his left ear on 2 June 2020. Dr. Byers examined Plaintiff's nasopharynx, which disclosed no tumor, lesions, or swelling. A tube was inserted to improve drainage. A subsequent Magnetic Resonance Image ("MRI") scan showed no tumor.

Plaintiff followed up with Dr. Byers on 13 July 2020. The doctor noted "[t]here was no finding of any tumor"; Plaintiff had no pain, no drainage, and was "doing great."

Eleven days later, on 24 July 2020, Plaintiff saw Dr. Ioana Pogacean, a dentist at University Dental Associates ("UDA"). Plaintiff reported he had been having trouble opening his mouth for about a month, and experienced pressure when he attempted to do so. While performing an examination Dr. Pogacean felt a 1.5 centimeter mass under Plaintiff's left lower jaw. Dr. Pogacean took an x-ray and noticed a dark spot. Dr. Pogacean referred Plaintiff to Dr. Kenneth T. Brown, ("Defendant"") a specialist and oral surgeon, whom Plaintiff saw the same day.

Dr. Brown performed a visual and palpatory (touch) examination and of Plaintiff's mouth, head, and neck to screen him for cancer. He noted no masses and no lesions and concluded no presence of cancer. Dr. Brown diagnosed Plaintiff with a temporomandibular joint disorder, or "TMJ." In addressing Plaintiff's self-reported concern, Dr. Brown prescribed Flexeril, Mobic, and a soft diet for the next thirty days.

Plaintiff followed up with Defendant Dr. Brown on 28 August 2020. Plaintiff reported feeling better and being able to open his mouth wider. Dr. Brown performed the same oral cancer screening as he had performed earlier, and again observed no tumors, masses, or lesions in Plaintiff's mouth, throat, or neck.

Plaintiff visited his primary care provider at Oak Street Health three times during the latter half of 2020: October 21, November 18, and on December 22. The appointment records from these visits document Plaintiff had no lesions, masses, swelling, or tumors in his mouth or throat. Plaintiff did not report any complaints regarding these bodily regions.

## B. Year of 2021

Plaintiff presented for a dental appointment on 29 January 2021. The appointment notes do not mention any complaints regarding Plaintiff's mouth, throat, jaw, or neck.

Plaintiff visited his primary care provider at Oak Street Health two more times on 16 February 2021 and 9 March 2021. The records from these visits do not document any complaints regarding Plaintiff's mouth, neck, or throat, and additionally, note "no gross masses or lesions" and "no deformity" in his neck area.

Plaintiff visited Dr. Mark Petrola, a dentist, and complained of swelling in his left cheek on 26 March 2021. Dr. Petrola performed a visual and palpatory examination and noted Plaintiff had a "hard mass" in his left cheek and the back of his left upper palate appeared to have a red and white lesion, which bled upon touch.

Dr. Petrola referred Plaintiff to an oral and maxillofacial ("OMF") surgeon, Dr. Mark Shehan. In April of 2021, the OMF surgeon performed a biopsy on the lesion on Plaintiff's left palate.

About six weeks later, on 10 May 2021, Plaintiff had an initial consultation with two otolaryngologists at Wake Forest Baptist Medical Center ("WFBMC"). These specialists documented a nasopharyngeal (top of throat) mass that extended to Plaintiff's left hard and soft palate. They biopsied the mass and ordered diagnostic imaging.

Plaintiff's OMF surgeon received the results from the April biopsy on 12 May 2021. The biopsy results confirmed squamous cell carcinoma. The specialists at WFBMC later confirmed these results. Plaintiff's doctors at WFBMC diagnosed him with naso-oropharyngeal cancer at the back of he nasal cavity and top of throat. He began receiving cancer treatment from a radiation oncologist.

**C. Lawsuit**

On 13 July 2022, Plaintiff sent Dr. Brown and UDA ("Defendants") a pre-suit settlement demand. The demand included Plaintiff's medical records from: (1) Dr. Byers, the otolaryngologist Plaintiff initially saw June of 2020 when he complained of fluid build-up in his left ear; (2) UDA, starting in 2019 and going through March of 2021; (3) the OMF surgeon who performed the biopsy in April of 2021; (4) WFBMC, starting in May of 2021; and, (5) select records from Plaintiff's primary care provider at Oak Street Health.

On 8 December 2022, Plaintiff filed suit against Defendants for: (1) negligence; (2) corporate negligence; (3) negligent supervision; (4) negligent infliction of emotional distress; and, (5) intentional infliction of emotional distress. He essentially argued Dr. Brown should have ordered a biopsy of the mass on his lower left jaw in July of 2020, and his failure caused a delayed cancer diagnosis.

Plaintiff identified Dr. William Benzing as his Rule 9(j) expert witness. Additionally, Plaintiff designated three experts to review and opine on causation: Dr. Benzing, Dr. Wayne Roccia, and Dr. Mike Armstrong, who did not provide an affidavit or deposition testimony.

On 12 August 2024, Dr. Brown and UDA filed and served their motion seeking summary judgment for all of Plaintiff's claims. The same filing also sought for the court to exclude the standard of care, causation, and damages opinions by Dr. Armstrong, and to exclude the causation and damages opinions of Dr. Benzing and Dr. Roccia.

Plaintiff voluntarily dismissed his claims for negligent infliction of emotional distress and intentional infliction of emotional distress on 24 September 2024, and Defendants withdrew their motion to exclude the testimony of Plaintiff's Rule 9(j) designated experts.

The superior court heard Defendants' motion for summary judgment the next day. granted the motion, and dismissed all of Plaintiff's remaining claims with prejudice by order on 15 October 2024. Plaintiff timely appealed on 12 November

2024.

## II.    Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2023).

## III.    Issues

Plaintiff argues the trial court committed reversible error in granting summary judgment for Defendants on: (1) Plaintiff's negligence claims against Dr. Brown, where Plaintiff alleges his evidence tended to show Dr. Brown's treatment violated the accepted professional standard of care; (2) Plaintiff's claims against UDA on corporate negligence claim; and, (3) Plaintiff's claims against UDA on negligent supervision, hiring, training, and retention of Dr. Brown.

## IV.    Standard of Review

"[T]he standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law." *Willis v. Town of Beaufort,* 143 N.C. App. 106, 108, 544 S.E.2d 600, 603 (2001) (citation omitted); N.C. Gen. Stat. § 1A-1, Rule 56(c) (2023). The moving party has the burden of establishing the lack of any triable issue of fact. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.,* 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985) (citation omitted).

A defendant may show entitlement to summary judgment by "(1) proving that an essential element of the plaintiff's case is nonexistent, or (2) showing through

discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense." *James v. Clark,* 118 N.C. App. 178, 181, 454 S.E.2d 826, 828 (1995) (citation omitted).

Summary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist. *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 470, 251 S.E.2d 419, 422 (1979) (citation omitted). "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway,* 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664 (2000).

To establish reversible error on the part of the trial court, Plaintiff must forecast evidence tending to show Defendants failed to exercise proper care in the performance of a legal duty which proximately caused and resulted in injury to him. "To hold otherwise . . . would be to allow plaintiffs to rest on their pleadings, effectively neutralizing the useful and efficient procedural tool of summary judgment." *Roumillat v. Simplistic Enterprises, Inc.,* 331 N.C. 57, 64, 414 S.E.2d 339, 342 (1992).

## V.   Analysis

Plaintiff argues the trial court erred in granting summary judgment to Defendants on the claims of (1) ordinary negligence by Dr. Brown; (2) corporate

negligence by UDA; and (3) negligent hiring and supervision by UDA. We address each argument in turn.

## A. Ordinary Negligence in Medical Malpractice

Plaintiff argues a genuine issue of material fact exists of whether Dr. Brown's breach of the applicable standard of care proximately caused Plaintiff's injuries. Plaintiff also argues he sufficiently forecast evidence to establish causation to survive summary judgment.

### 1. Proximate Cause

To prove medical negligence, a plaintiff must proffer evidence establishing the plaintiff's injuries were proximately caused by the defendant's breach of the applicable standard of care. *Cousart v. Charlotte-Mecklenburg Hosp. Auth.*, 209 N.C. App. 299, 303, 704 S.E.2d 540, 543 (2011). Proximate cause is

> a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.

*Hawkins v. Emergency Med. Physicians of Craven Cnty., PLLC*, 240 N.C. App. 337, 341–42, 770 S.E.2d 159, 162–63 (2015) (citation omitted).

A plaintiff in a medical malpractice case must rely upon expert testimony to establish proximate cause, if the purported negligence is not obvious or *per se* speaks for itself. *Id.* at 342, 770 S.E.2d at 163 (citation omitted). "[A]n expert is not

competent to testify as to a causal relation which rests upon mere speculation or possibility." *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000) (citation omitted). An expert's conclusory statement, without factual support, is insufficient to raise a genuine issue of material fact of proximate cause. *Liller v. Quick Stop Food Mart, Inc.*, 131 N.C. App. 619, 625, 507 S.E.2d 602, 606 (1998).

In response to Defendant's supported motion for summary judgment ,plaintiffs must establish a *prima facie* case, "which includes articulating proximate cause with specific facts couched in terms of probabilities." *Hawkins*, 240 N.C. App. at 342, 770 S.E.2d at 163. "[E]vidence connecting medical negligence to injury . . . must be probable, not merely a remote possibility." *Cousart*, 209 N.C. at 302, 704 S.E.2d at 543. Prior decisions demonstrate:

> where a plaintiff alleges that he or she was injured due to a physician's negligent failure to diagnose or treat the plaintiff's medical condition sooner, the plaintiff must present at least some evidence of a causal connection between the defendant's failure to intervene and the plaintiff's inability to achieve a better ultimate medical outcome.

*Lord v. Beerman*, 191 N.C. App. 290, 294, 664 S.E.2d 331, 334 (2008); *see, e.g., Lindsey v. Clinic for Women*, 40 N.C. App. 456, 253 S.E.2d 304 (1979); *Bridges v. Shelby Women's Clinic, P.A.*, 72 N.C. App. 15, 323 S.E.2d 372 (1984).

> Even where a plaintiff has introduced some evidence of a causal connection between the defendant's failure to diagnose or intervene sooner and the plaintiff's poor ultimate medical outcome, our Court has held that such evidence is insufficient if it merely speculates that a causal

connection is possible.

*Lord*, 191 N.C. App. at 295, 664 S.E.2d at 335; *compare with Turner v. Duke University*, 325 N.C. 152, 381 S.E.2d 706 (1989).

### 2. *Argument*

Plaintiff argues Dr. Brown's failure to perform the appropriate examination "led to a misdiagnosis of TMJ and delayed a diagnosis of cancer, which more likely than not caused "the morbidities associated with . . . Plaintiff's medical condition after July 24, 2020."

Plaintiff initially identified three expert witnesses to opine on standard of care, causation, and damages. Only two of those experts gave deposition testimony: Dr. Benzing and Dr. Roccia.

Dr. Benzing asserted several criticisms of Dr. Brown, in his deposition testimony. He criticized Dr. Brown as having violated the appropriate standard of care by failing to properly document his examination of Plaintiff to indicate what he observed and was not observed in Plaintiff's mouth, and by failing to conduct additional testing. He opined Dr. Brown missed an opportunity to diagnose Plaintiff's cancer in July of 2020 and the delay in Plaintiff's treatment more likely than not caused increased morbidity from his disease.

However, Dr. Benzing also testified the swelling in the lower left jaw Plaintiff presented with to Dr. Brown in July of 2020 was not necessarily the same cancer doctors later found in the back of the roof of Plaintiff's mouth in March of 2021,

although it may have been a symptom.

> Q.     Okay.  Are you prepared to express any opinion that the left-sided submandibular mass noted by Dr. Pogacean in the referral slip was a cancerous tumor as of July 24th, 2020?
>
> A.     No, I cannot say . . . . that was a cancerous tumor, no.

When asked if he was planning to express an opinion asserting the swelling in Plaintiff's lower left jaw *led to* the cancer Plaintiff was eventually diagnosed with, Dr. Benzing testified he could not express that opinion, only asserting the swelling was cause for concern, "likely a sign of something that's going on."  Counsel for Defendants asked Dr. Benzing:

> Q.     . . . Is it fair to say, Doctor, that even if you believe there's a greater chance of improvement if the cancer was identified sooner, you cannot quantify that chance? . . . You'd be speculating if you were to express an opinion at trial as to what the improvement degree might be?
>
> A.     I guess I'd be speculating, but most people know that if you can get a cancer earlier when it's smaller, it's . . . much less morbid . . . .
>
> Q.     But you can't quantify that, especially as to this particular cancer? . . .
>
> A.     No. You'd have to have an oncologist or otolaryngologist who specializes in cancer treatment to do that.

Dr. Roccia opined when Plaintiff initially visited Defendant Dr. Brown complaining of difficulty opening his mouth, Dr. Brown had failed to perform the proper examination, failed to properly document the examination, and he incorrectly

treated the patient, effectively violating the appropriate standard of care. However,

Dr. Roccia also testified it was not his opinion Plaintiff had cancer in his lower left

jaw at the time of Dr. Brown's examinations. Counsel for Defendants asked Dr.

Roccia:

> Q.     Are you going to be offering any opinions at trial as to when [Plaintiff] first developed cancer?
>
> A.     No.
>
> . . . .
>
> Q.     Are you going to be offering any opinions at trial as to how [Plaintiff's] cancer progressed?
>
> A.     No.
>
> Q.     Are you going to express any opinion at trial that the lesion or concern mentioned by Dr. Pogacean before the referral to Dr. Byers was cancerous?
>
> A.     I don't know if it was cancerous or not.
>
> . . . .
>
> Q.     Even if you believe there was a greater chance of improvement if the cancer was identified sooner, you'd be speculating if you were to express an opinion at trial as to what that improvement degree might be, right?
>
> A.     I'm not an oncologist. Therefore, I'm not going to comment on the progression of any kind of cancerous lesion.
>
> . . . .
>
> Q.     Is it fair to say that you cannot testify with any degree of reasonable medical certainty that the scan results would have been any different six months or three months sooner than the CT and PET scans performed in

May of 2021?

. . . .

A.      . . . I cannot state at this time whether those scans or the progression of any kind of lesion that was or was not there at that time would not have been smaller. Generally speaking, cancerous lesions grow, and based on what type of cancer, they grow at different rates. So if something was there, it should have been there at previous images, even several months beforehand . . . .

Plaintiff has not forecast sufficient evidence tending to show Dr. Brown's breach of his duty of care caused the injuries he suffered.. Although Plaintiff's experts believed Dr. Brown violated his duty of care to Plaintiff, they could not opine Plaintiff's oropharyngeal cancer was directly related to the swelling present in Plaintiff's lower left jaw in July of 2020, or Plaintiff even had a cancer to diagnose when Dr. Brown had examined him.

Plaintiff's experts speculated the two were likely related, and if Plaintiff's cancer had been caught earlier, Plaintiff's injuries would not be as great. Neither witness testified to "specific facts couched in terms of probabilities" as to *how* much better Plaintiff's injuries would have been in 2021 when Plaintiff's oropharyngeal cancer was detected had Dr. Brown not purportedly violated the standard of care. *See Hawkins*, 240 N.C. App. at 342, 770 S.E.2d at 163. "Proof of proximate cause in a malpractice case requires more than a showing that a different treatment would have improved the patient's chances of recovery." *White v. Hunsinger*, 88 N.C. App. 382, 386, 363 S.E.2d 203, 206 (1988). Because Plaintiff cannot show proximate cause, we

affirm summary judgment in favor of Dr. Brown on the issue of ordinary negligence.

### B. Corporate Negligence and Negligent Supervision

Plaintiff argues the trial court erred in granting summary judgment to Defendants on the claims of corporate negligence and negligent supervision. We disagree.

In order to survive a motion for summary judgment, a plaintiff asserting corporate negligence and negligent supervision must show proximate cause, defendant's alleged omission contributed to his injuries. *See Bost v. Riley*, 44 N.C. App. 638, 648, 262 S.E.2d 391, 397 (1980); *see also White*, 88 N.C. App. at 387, 363 S.E.2d at 206; *Gower v. Davidian*, 212 N.C. 172, 193 S.E.2d 28 (1937).

As held above, Plaintiff has failed to forecast Dr. Brown's negligence proximately caused his injuries, and Plaintiff cannot also prove his corporate negligence and negligent supervision claims. Plaintiff has not shown UDA's alleged omission caused his injuries, Plaintiff's claims fail and summary judgment was properly granted to Defendants.

### VI. Conclusion

Defendants made a showing through competent evidence to rebut Plaintiff's claims and to show entitlement to summary judgment. Upon such showing, it became incumbent upon Plaintiff to produce a forecast of evidence showing he could at least establish a *prima facie* case at trial. *Gaunt,* 139 N.C. App. at 784-85, 534 S.E.2d at 664. This he failed to do. The trial court properly entered summary judgment on

behalf of Defendants. The order appealed from is affirmed. *It is so ordered.*

AFFIRMED.

Judge Wood concurs.

Judge Freeman concurs in result only.